RECEIVED BY MAIL

MAY 1 3 2026

CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

        Plaintiff-Respondent,

v.

JOHN SHELDON PICKENS,

        Defendant-Petitioner.

Crim Case No. 19-314-ADM

Civ. Case No. 23-1363-ADM

---

**PETITIONER JOHN SHELDON PICKENS' MOTION TO VACATE JUDGMENT DENYING HIS 28 U.S.C. §2255 MOTION PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 60(b)(3) AND 60(b)(6) AND MEMORANDUM IN SUPPORT**

---

## MOTION

Petitioner John Sheldon Pickens respectfully moves this Court, pursuant to Federal Rules of Civil Procedure 60(b)(3) and 60 (b)(6), to vacate the judgment it entered denying his motion to correct, vacate, or set aside his conviction and sentence under 28 U.S.C. § 2255. This motion is based on the attached memorandum of law, the attached exhibits and the entire record of these proceedings.

## MEMORANDUM

This motion does not seek to relitigate matters already decided on the merits, but rather to remedy a fundamental defect in the prior proceedings—namely, the government's deliberate suppression of documentary evidence that was uniquely material to every dispositive issue in Pickens's § 2255 proceedings and, before those proceedings, to the constitutional integrity of his trial. The suppressed document, a receipt signed by Saint Paul Police Commander Salim Omari reflecting the expiration of the cell phone GPS location tracking warrant (the "Expiration Receipt") is now in Pickens's possession. It confirms, with documentary finality, what Pickens has consistently maintained: that

SCANNED

MAY 1 3 2026

U.S. DISTRICT COURT MPLS

Commander Omari's monitoring of Pickens's cell phone GPS location data was conducted without a valid warrant in flagrant violation of the Fourth Amendment of the United States Constitution and in violation of Minnesota Statutes §§ 626A.37 and 626A.35. The government possessed the Expiration Receipt throughout the trial, the direct appeal, and the § 2255 proceedings. At no point did the government disclose it, notwithstanding Pickens's formal *Brady* motion and the government's constitutional and statutory obligations to do so.

The consequences of the government's suppression were catastrophic and cascading. Because the Expiration Receipt was withheld, Pickens was unable at trial to establish that Omari's GPS monitoring was warrantless, to impeach Omari and other government witnesses who testified or implied that the tracking was lawful, or to contest the jury instruction that erroneously told the jury the tracking warrant was valid.

Because the Expiration Receipt was withheld, Pickens's trial counsel operated without a critical piece of evidence that would have compelled the filing and prosecution of a pretrial suppression motion. Because the Expiration Receipt was withheld, both the Eighth Circuit on direct appeal and this Court in the § 2255 proceedings were forced to evaluate the legality of the stop and seizure under conditions of epistemic uncertainty, with the Eighth Circuit itself acknowledging that it was "hardly free from doubt" that the tracking warrant had expired, and with this Court having to "assum[e] without deciding." And because the Expiration Receipt was withheld, Pickens was denied the opportunity to present his strongest habeas claims—*Brady*, prosecutorial misconduct, and the full constellation of ineffective assistance of counsel grounds that flow from counsel's failure to investigate and leverage evidence that would have gutted the government's case.

The misconduct of the government in this case is not a matter of ambiguous judgment or excusable oversight. The government possessed the Expiration Receipt. It

2

knew or should have known that the validity of the tracking warrant was the linchpin of its entire prosecution. It nonetheless withheld the Expiration Receipt—not only at trial, not only on appeal, but throughout the § 2255 habeas proceedings in which Pickens expressly litigated the question of whether the warrant had expired and whether counsel was constitutionally deficient for failing to prove it. This suppression constitutes fraud on the proceeding within the meaning of Rule 60(b)(3) and presents the kind of extraordinary circumstances that justify relief under Rule 60(b)(6). The judgment denying Pickens's § 2255 motion must be vacated.

## STATEMENT OF THE FACTS

Saint Paul Police Commander Salim Omari obtained a search warrant authorizing the monitoring of Petitioner Pickens's cell phone GPS location data. See Exhibit A to the Declaration of John Sheldon Pickens ("Pickens Decl."). Omari obtained that warrant for the limited purpose of apprehending Pickens on an outstanding warrant. *Id.* Omari executed the warrant and apprehended Pickens. The tracking warrant then expired. The expiration of the warrant is documented in a written receipt—signed by Commander Omari himself—reflecting that the warrant had been executed and had expired (the "Expiration Receipt"). See Pickens Decl. Ex. B. The Expiration Receipt is now in Petitioner's possession, having been obtained by Petitioner from the State of Minnesota in connection with a separate matter. It was in the government's possession at all times during Pickens's trial, direct appeal, and § 2255 proceedings.

Commander Omari continued to access and monitor Pickens's cell phone GPS location data using the access he had gained pursuant to the since-expired warrant—as the government described in its opening argument, as Omari described at trial, as the jury was instructed, as the appellate court noted in its opinion, as the government conceded in

3

Pickens' § 2255 proceedings and as this Court has repeatedly observed in its many orders through this case, including in these § 2255 proceedings. What no one noted—because the government concealed the information necessary to reveal the fact—was that Commander Omari's monitoring occurred after the tracking warrant expired, rendering Omari's monitoring entirely warrantless.

This continued monitoring constituted a warrantless search in violation of the Fourth Amendment to the United States Constitution. See *Carpenter v. United States*, 585 U.S. 296, 310 (2018) (holding that the government's acquisition of historical cell-site location information is a Fourth Amendment search requiring a warrant). It also violated Minnesota Statutes §§ 626A.37 and 626A.35, which impose criminal prohibitions on the warrantless electronic monitoring of cell phone location data.

While conducting this warrantless GPS tracking, Omari observed that Pickens had made a brief trip to Chicago, Illinois. Treating this observation—derived entirely from unlawful, warrantless tracking—as the foundation for further investigative action, Omari arranged an investigatory vehicle stop on Interstate Highway 94 near the Minnesota-Wisconsin border. Because the predicate for that stop was GPS location data obtained without a warrant, the attempted stop was constitutionally infirm from its inception. See *Wong Sun v. United States*, 371 U.S. 471, 485 (1963) (evidence obtained as a direct result of an unlawful search or seizure is tainted as "fruit of the poisonous tree"). Pickens was not intercepted at the border stop and proceeded to travel to Saint Paul, Minnesota.

Following the failed border interception, Omari and his team located Pickens in a residential neighborhood in Saint Paul. Officers conducted an investigatory stop of Pickens's vehicle. That stop was unconstitutional for two independent and reinforcing reasons. First, the stop was predicated entirely upon GPS location data that had been gathered without a valid warrant, rendering it the fruit of an unlawful search. Second, and

4

independently, it is undisputed in the record that Pickens was obeying all applicable traffic laws at the time of the stop and that law enforcement possessed neither probable case nor reasonable, articulable suspicion to justify the traffic stop under *Terry v. Ohio*, 392 U.S. 1 (1968). As Pickens pulled his vehicle to the side of the road in response to law enforcement presence, a number of unmarked police vehicles converged aggressively upon him. This sudden and alarming approach triggered a physiological flight response in Pickens, who fled in his vehicle. Law enforcement pursued and ultimately detained Pickens. During the detention and subsequent search of Pickens's vehicle, officers discovered controlled substances. It was the discovery of these controlled substances—and only this discovery— that formed the evidentiary basis for the federal charges brought against Pickens.

The government charged Pickens with possession of controlled substances with intent to distribute. Prior to trial, Pickens's counsel filed a motion seeking disclosure of *Brady* materials. Pickens Decl. Ex. C. The government would eventually state that it had turned over all exculpatory material. The government's statement was false; the government was in possession of the Expiration Receipt at this time. The government did not disclose the Expiration Receipt, despite its manifest relevance to the validity of the tracking warrant and despite its direct bearing on the constitutional basis for the stop, seizure, and subsequent search of Pickens's vehicle. The Expiration Receipt was squarely material under *Brady v. Maryland*, 373 U.S. 83 (1963), and *United States v. Bagley*, 473 U.S. 667, 682 (1985), because it would have established with documentary certainty that Omari's GPS monitoring of Pickens was warrantless, thereby providing the necessary factual predicate for motion to suppress every item of evidence the government possessed— the contraband seized from Pickens's vehicle, Pickens's post-arrest statements, and all evidence derivative of the unlawful search.

Instead of disclosing that the tracking warrant had expired, the government did just the opposite and lied by claiming that the tracking warrant was valid at all relevant times. During Pickens's three-day jury trial, the government referenced the October 5, tracking warrants in its case-in-chief. In its opening statement, the government said it would prove Pickens "ran drugs from Chicago to Minnesota" on November 1 "because they were tracking his cell phone. They had … a warrant to do that." The government's second witness, Sergeant Scott Schneider, testified that law enforcement located Pickens that morning by "pinging his cell phone." Asked if "law enforcement has to get a warrant to do that," Sergeant Schneider responded, "Yes." On the second day, Commander Omari testified that he was monitoring Pickens cell phone GPS data pursuant to a valid "tracking warrant to get GPS ping locations for Mr. Pickens's phone devices." Because of these misrepresentations, the jury was erroneously instructed that "the [tracking] was lawfully obtained in an unrelated investigation."

Pickens appealed. The Eighth Circuit Court of Appeals affirmed the conviction. In its opinion, the Eighth Circuit held that Pickens had waived the suppression issue by failing to litigate it prior to trial. Critically, the Eighth Circuit noted that it was "hardly free from doubt" that the tracking warrant had expired—a statement of uncertainty that directly reflects the prejudicial impact of the government's suppression of the Expiration Receipt. Because the Eighth Circuit operated without the Expiration Receipt, it could not resolve that uncertainty and instead analyzed Pickens's flight through the lens of the independent basis exception to the exclusionary rule, reasoning that Pickens's act of fleeing from law enforcement might have independently authorized the subsequent search of his vehicle.

Pickens timely filed a motion to vacate his conviction pursuant to 28 U.S.C. § 2255. His § 2255 motion raised, among other grounds, a claim that his trial counsel rendered

6

constitutionally ineffective assistance in violation of the Sixth Amendment by failing to investigate and prosecute a suppression motion and by withdrawing the suppression motion without justification. In its opposition to Pickens's 28 U.S.C. § 2255 motion, the government denied that the tracking warrants had expired: "The Government ... maintains that the tracking warrants were valid." Gov't Opp.

This Court denied Pickens's § 2255 motion. The Court held that counsel's deficient performance was not prejudicial within the meaning of *Strickland v. Washington*, 466 U.S. 668 (1984), because it reasoned that Pickens's flight from law enforcement provided police with an independent basis to search his vehicle. As this Court did in § 2255, the Eighth Circuit noted at the time of direct appeal that was unclear whether the tracking warrant had expired—a finding that, had the Expiration Receipt been before the Court, would necessarily have resolved in Pickens's favor. Pickens sought a certificate of appealability, which the Eighth Circuit denied. The Eighth Circuit also denied rehearing. The Supreme Court of the United States denied certiorari. Pickens has now obtained the Expiration Receipt from the State of Minnesota in connection with a separate proceeding. The Expiration Receipt is a document signed by Commander Omari reflecting the execution and expiration of the tracking warrant. It conclusively establishes that the warrant expired well before Omari monitored Pickens's cell phone GPS location data during the period at issue—specifically, before the Chicago trip that precipitated this prosecution. This document was in the government's possession throughout the trial, direct appeal, and the § 2255 proceedings. It was never disclosed to Pickens, his counsel, or this Court, notwithstanding Pickens's pretrial *Brady* motion. The government's withholding of the Expiration Receipt constitutes fraud upon these proceedings and misconduct within the meaning of Rule 60(b)(3). It also constitutes the kind of extraordinary, unconscionable government conduct

that justifies relief under 60(b)(6). Pickens now brings this motion to vacate the judgment denying his § 2255 motion.

## SUMMARY OF ARGUMENT

This Court should vacate its judgment denying Pickens's § 2255 motion and reopen those proceedings to permit Pickens to present a full and constitutionally adequate habeas challenge to his conviction. The government suppressed the Expiration Receipt— documentary proof, signed by the lead investigating officer, that the warrant authorizing GPS tracking of Pickens's cell phone had expired before Omari conducted the surveillance that generated the only evidence in this case.

The suppression of this evidence constitutes fraud within the meaning of Rule 60(b)(3) because it was a misrepresentation or concealment of material fact that prevented Pickens from fully and fairly presenting his habeas claims. Separately and alternatively, the government's suppression of this evidence across every stage of the criminal proceedings—from the *Brady* motion through the § 2255 habeas proceedings—constitutes extraordinary circumstances warranting relief under Rule 60 (b)(6)'s catch-all provision. The government's fraud and misconduct were deeply prejudicial. Had the Expiration Receipt been disclosed, Pickens could have demonstrated that his trial counsel's abandonment of the suppression motion was not merely professionally deficient but catastrophically so, because suppression would have been both meritorious and virtually certain to succeed. The suppression motion would have required the Court to apply the attenuation doctrine—not the independent basis or inevitable discovery doctrines—to evaluate the admissibility of evidence derived from Omari's warrantless GPS monitoring.

Under the proper attenuation analysis, the evidence would have been suppressed: the government's conduct was intentional and egregious, the warrant expiration was

known to Omari, the GPS monitoring was a direct violation of both the Fourth Amendment and Minnesota's criminal prohibition on warrantless cell phone location tracking, and the causal connection between the unlawful monitoring and the discovery of the evidence was unbroken. The independent basis doctrine does not save the government because the investigatory stop in Saint Paul—which preceded the flight and the search—was itself the product of warrantless GPS tracking, not an independent source. The automobile exception does not apply because police lacked any lawfully obtained information that would have independently supplied probable cause to believe contraband was in Pickens's vehicle. And because the underlying conduct was a knowing, deliberate violation of a clearly established constitutional right, this is precisely the kind of case in which the exclusionary rule serves its core deterrent function.

Had the Expiration Receipt been available during the § 2255 proceedings, Pickens could further have raised in § 2255: a *Brady* challenge to the government's suppression of the Expiration Receipt; a prosecutorial misconduct claim based on the government's misrepresentations at trial regarding the validity of the tracking warrant; additional ineffective assistance claims grounded in counsel's failure to investigate the warrant's validity, failure to cross-examine Omari and other witnesses who implied the tracking was lawful, and failure to challenge the jury instruction that erroneously told the jury the warrant was valid; and a claim the government's conduct in securing a conviction through evidence obtained from knowingly warrantless search rises to the level of a structural constitutional violation. Relief under Rules 60(b)(3) and 60(b)(6) is warranted, and the judgment denying Pickens's § 2255 motion should be vacated.

9

## ARGUMENT

I. **The Court Should Vacate the Judgment Denying Pickens's § 2255 Motion Pursuant To Federal Rule Of Civil Procedure 60(b)(3)**

A. **Legal Standard Governing Rule 60(b)(3) Motions**

Federal Rule of Civil Procedure 60(b)(3) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: ... fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). Rule 60(b)(3) is available to parties seeking relief from judgments in § 2255 proceedings. See *Gonzalez v. Crosby*, 545 U.S. 532 (2005) (acknowledging that Rule 60(b) applies in the habeas context where a movant attacks a defect in the integrity of the federal habeas proceedings rather than the underlying conviction). A motion under Rule 60(b)(3) must be filed within one year of the entry of the challenged judgment. Fed. R. Civ. P. 60(c)(1). Pickens satisfies this timeliness requirement because he brings this motion within one year of his discovery of the Expiration Receipt—the newly disclosed evidence that reveals the fraud upon the § 2255 proceedings—and because equitable tolling principles apply where, as here, the government's own fraudulent concealment prevented earlier discovery. See *Holland v. Florida*, 560 U.S. 631, 645 (2010) (equitable tolling applies in habeas proceedings where "some extraordinary circumstance stood in [the petitioner's] way").

To obtain relief under Rule 60(b)(3), a movant must establish by clear and convincing evidence: (1) that the opposing party engaged in fraud, misrepresentation, or other misconduct; (2) that the movant had a meritorious claim or defense at the time of the final judgment; and (3) that the misconduct prevented the movant from fully and fairly presenting his case or defense." *Anderson*, 862 F.2d at 923. Pickens satisfies each element of this standard.

10

B.   A Rule 60(b)(3) Motion Attacking the Integrity of the § 2255 Proceeding Is Not a Second or Successive § 2255 Motion.

As a threshold matter, this motion does not constitute a second or successive motion under 28 U.S.C. § 2255(h) requiring prior authorization from the Eighth Circuit Court of Appeals. The distinction between a proper Rule 60(b) motion and an impermissible second or successive § 2255 petition was definitively settled by the Supreme Court in *Gonzalez v. Crosby*, 545 U.S. 524 (2005). In *Gonzalez*, the Court held that a Rule 60(b) motion that attacks, not the substance of the federal court's resolution of a claim on the merits, but rather come defect in the integrity of the federal habeas proceedings, is not a second or successive petition. 545 U.S. at 532. The Court specifically identified the government's fraudulent conduct in the habeas proceedings as the paradigmatic example of a defect in the integrity of the § 2255 proceeding that is properly addressed through Rule 60(b), rather than through a successive § 2255 filing. *Id.* at 532 n.5. This motion falls squarely within the *Gonzalez* framework.

Pickens does not contend here that the Court erred in its analysis of the claims actually presented to it during the § 2255 proceedings. Rather, Pickens contends that the government's suppression of the Expiration Receipt—which was in the government's possession throughout the § 2255 proceedings—prevented Pickens from presenting the full panoply of claims to which he was constitutionally and legally entitled. The fraud that forms the predicate for this motion is fraud upon the § 2255 proceedings themselves, not a re-litigation of the merits of the claims that were presented and denied. This Court therefore has jurisdiction over this motion, and Pickens need not obtain authorization from the Eighth Circuit before proceeding. See *Thai v. Mapes*, 412 F.3d 970, 972-73 (8th Cir. 2005) (recognized the Gonzalez framework and confirming that Rule 60(b) motions

11

attacking defects in the integrity of federal habeas proceedings are not successive petitions); *Wooten v. Norris*, 578 F.3d 767, 772 (8th Cir. 2009) (same).

The Eighth Circuit has drawn this distinction with care. A movant impermissibly presents a second or successive § 2255 petition through a Rule 60(b) motion when the motion asserts a federal basis for relief from the underlying convection, such as a new claim of constitutional error or a new constitutional rule not previously raised. *Gonzalez*, 545 U.S. at 530-32. But where, as here, the Rule 60(b) motion attacks the federal habeas proceeding itself—specifically, fraud and misconduct that infected those proceedings and prevented their fair adjudication—the motion is not successive and requires no circuit court authorization. *Id.* at 532. The fraud here—the government's deliberate concealment of the Expiration Receipt through and including the § 2255 proceedings—is a textbook defect in the integrity of the prior federal habeas proceeding. To hold otherwise would be to allow the government to insulate its most brazen misconduct from habeas review simply by ensuring that the misconduct spans the full duration of the criminal and habeas proceedings.

C.  **The Government's Suppression Of The Expiration Receipt Constitutes Fraud Upon The § 2255 Proceedings Within The Meaning Of Rule 60(B)(3)**

The government's withholding of the Expiration Receipt from Pickens constitutes actionable fraud and misconduct under Rule 60(b)(3) by clear and convincing evidence. The Expiration Receipt was a document signed by the government's own lead investigating officer, Commander Omari, reflecting the execution and expiration of the tracking warrant that the government consistently represented—to the jury, to the appellate court, and to this Court during the § 2255 proceedings—to have been valid. The government was in actual possession of the Expiration Receipt at all relevant times, including during the pendency of Pickens's *Brady* motion at trial, his direct appeal, and his § 2255 proceedings.

12

The government's obligation to disclose the Expiration Receipt was not ambiguous. *Brady v. Maryland*, 373 U.S. 83 (1963), requires the government to disclose all evidence favorable to the accused that is material to guilt or punishment. *Id.* at 87. Evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). The *Brady* obligation extends to impeachment evidence. *Id.* at 676. The *Brady* obligation is ongoing—it persists through collateral proceedings. See *Banks v. Dretke*, 540 U.S. 668, 696 (2004) (condemning a state's persistent suppression of *Brady* material through post-conviction proceedings as conduct that fundamentally undermined the reliability of the adjudicative process). The Expiration Receipt was exculpatory and impeachment evidence of the highest order. It directly contradicted Omari's testimony at trial and demolished the premise of the jury instruction regarding the validity of the tracking warrant. Its withholding during Pickens's *Brady* motion request at trial was a *Brady* violation. Its continued withholding during the § 2255 proceedings—in which the validity of the tracking warrant was a live and explicitly contested issue—was fraud upon those proceedings within the meaning of Rule 60(b)(3).

The government cannot take refuge in the argument that the Expiration Receipt was merely "cumulative" of other evidence in the record. The Eighth Circuit's own opinion demonstrates the opposite: the court acknowledged that it was "hardly free from doubt" whether the tracking warrant had expired. That statement of judicial uncertainty— appearing in the very decision that affirmed Pickens's conviction on direct appeal— is dispositive proof that the Expiration Receipt was not cumulative. The Eighth Circuit lacked the evidentiary certainty to resolve the warrant expiration question definitively. The government's suppression of the Expiration Receipt—the single piece of documentary

13

evidence that would have resolved that question with finality—is precisely the kind of misconduct the Rule 60(b)(3) was designed to remedy.

Nor can the government claim that the Expiration Receipt was not in its possession or control. It was Omari—the government's own investigating officer and testifying witness—who signed the Expiration Receipt. The government is charged with knowledge of evidence in the possession of its investigating officers. *Kyles v. Whitely*, 514 U.S. 419, 437-38 (1995) (holding that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police"). The Expiration Receipt was a document created and signed by one of the government's own witnesses. The government possessed it. It did not disclose it. That failure is the essence of Rule 60(b)(3) fraud.

> **D.      The Government's Fraud Was Prejudicial Because It Prevented Pickens From Fully And Fairly Presenting His § 2255 Claims.**

To obtain relief under Rule 60(b)(3), Pickens must demonstrate that the government's fraud "prevented [him]from fully and fairly presenting" his case during the § 2255 proceedings. *Anderson v. Cryovac, Inc.*, 862 F.2d at 923. He makes that showing with overwhelming force.

> **1.      The Expiration Receipt Would Have Established The Predicate For Pickens's Most Powerful § 2255 Claims.**

Had the government disclosed the Expiration Receipt, Pickens could have raised and litigated multiple § 2255 grounds that were unavailable to him—or that were materially undermined—because of the government's suppression. First, Pickens could have raised an independent *Brady* violation claim, arguing that the government's suppression of the Expiration Receipt—evidence that would have compelled suppression of the government's entire case—was itself a basis for vacating the conviction. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999) (describing the three components of a *Brady* violation: that evidence is

14

favorable to the accused, that it was suppressed by the state, and that prejudice resulted). Second, Pickens could have raised a prosecutorial misconduct claim grounded in the government's affirmative misrepresentations to the jury, to the Eighth Circuit, and to this Court that the tracking was conducted pursuant to a valid warrant. See *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (due process is violated when the government knowingly permits false testimony to go uncorrected). Third, Pickens could have raised a fully developed Sixth Amendment ineffective assistance of counsel claim encompassing not only counsel's failure to prosecute the suppression motion but also counsel's failure to investigate the warrant's validity, to cross-examine Omari on the warrant's status, to impeach the government's witnesses who testified or implied that the tracking was lawful, and to challenge the false jury instruction.

2. The Expiration Receipt Defeats The Independent Basis Doctrine, Which Cannot Justify The Denial Of Pickens's Suppression Claim.

The central legal question in both the § 2255 proceedings and the direct appeal was whether the taint of Omari's warrantless GPS monitoring could be purged by some intervening event sufficient to render the evidence admissible despite the Fourth Amendment violation. Both this Court and the Eighth Circuit analyzed that question through the lens of the independent basis doctrine, reasoning that Pickens's act of fleeing from law enforcement might have independently authorized the subsequent search of his vehicle. The Expiration Receipt demolishes the factual premise of that analysis.

The independent source doctrine, as articulated in *Murray v. United States*, 487 U.S. 533, 537 (1987), permits the admission of evidence that law enforcement discovered through an unlawful search if "it [was] also discovered through an independent, untainted source." 487 U.S. at 537. The doctrine's requirements are demanding: the independent source must be genuinely independent of the taint—that is, the discovery through the

15

lawful source must not have been prompted by or causally connected to the prior unlawful activity. *Id.* at 542. Pickens's case does not come close to satisfying this standard. The entire sequence of events that led to the discovery of the controlled substance was causally initiated by Omari's warrantless GPS monitoring. It was the warrantless GPS monitoring that revealed Pickens's trip to Chicago. It was the Chicago trip that prompted Omari to arrange the investigatory border stop on I-94. It was the failure of the border stop that led Omari's team to locate Pickens in Saint Paul. It was the Saint Paul stop—itself the direct product of the warrantless GPS monitoring, and independently unlawful because law enforcement lacked any probable cause or reasonable suspicion not derived from the tainted GPS data—that triggered Pickens's flight response. The flight, in turn, led to the pursuit, detention, and discovery of the contraband. There is no link in this causal chain that is independent of Omari's warrantless GPS monitoring. The independent source doctrine does not apply.

The government may argue that Pickens's flight from the Saint Paul stop constituted an independent intervening act that severed the casual chain and independently authorized the search. But this argument fails at every level of analysis. The Saint Paul stop was not a lawful encounter from which Pickens had no right to flee; it was an unconstitutional seizure grounded entirely on illegally obtained GPS location data. A defendant's response—even a flight response—to an unconstitutional stop cannot be treated as an independent basis for a search without converting the Fourth Amendment's exclusionary rule into a nullity. If police can conduct an unlawful stop, provoke a flight response through the unlawfulness of the stop, and then use that flight response as an independent basis to search the fleeing individual, then there is no Fourth Amendment protection from which a citizen can practically benefit. The Supreme Court has rejected precisely this kind of circular reasoning. See *Brown v. Illinois*, 422 U.S. 590, 602 (1975)

16

(rejecting the argument that a defendant's pos-arrest statement constituted an independent break in the chain of illegality where the arrest itself was unlawful, and holding that the causal connection between the illegality and the evidence must be evaluated on all relevant circumstances).

      3.      **Pickens's Case Is Distinguishable From *Sledge, Dawdy* And *Flores-Lagonas***

The government will likely invoke *United States v. Sledge*, 460 F.3d 963 (8th Cir. 2006), *United States v. Dawdy*, 46 F.3d 1427 (8th Cir. 1995), and *United States v. Flores-Lagonas*, 993 F.3d 550 (8th Cir. 2021) in support of its position that Pickens's flight provided law enforcement with an independent basis to search his vehicle. These cases do not support the government's position, and Pickens's case is materially distinguishable from each of them.

In *Sledge*, the Eighth Circuit considered whether officers were justified in stopping and searching a defendant's vehicle after the defendant, who was not the initial target of the investigation, fled from officers who were lawfully present in the area conducting an unrelated investigation. *Sledge*, 460 F.3d at 965-66. The critical distinction between *Sledge* and Pickens's case is that, in *Sledge*, the officers' presence and initial conduct were lawful and independent of any Fourth Amendment violation. The flight in *Sledge* occurred in a context where the police had a lawful right to be and to observe. In Pickens's case, by contrast, the officers had no lawful basis to be tracking Pickens in the first place—their entire knowledge of Pickens's location and movements was derived from a warrantless search. There was no "lawful vantage point" from which law enforcement observed suspicious behavior; every vantage point they occupied was a product of the constitutional violation.

*Dawdy* is similarly distinguishable. *United States v. Dawdy*, 46 F.3d 1427 (8th Cir. 1995) involved a situation where officers conducting an authorized stop observed additional independently suspicious behavior that justified further investigation. *Id.* at 1431. In Pickens's case, there was no authorized stop. The Saint Paul stop was constitutionally infirm from the outset because it was predicated entirely on warrantless GPS tracking data. There was no independent observation of suspicious conduct that was not itself derivative of unlawful monitoring. The government cannot bootstrap a lawful stop out of an unlawful search simply by asserting that the observed behavior—in this case, travel to Chicago—was suspicious. See *Carpenter v. United States*, 585 U.S. at 311 (stressing that the deeply invasive nature of cell phone GPS tracking requires that its use be predicated on a valid warrant, precisely because ordinary travel patterns do not justify surveillance without judicial authorization).

*Flores-Lagonas* is also inapposite. In *United State v. Flores-Lagonas*, 993 F.3d 550 (8th Cir. 2021), the Eighth Circuit applied the independent source and inevitable discovery doctrines in a context where law enforcement had gathered evidence through both a potentially problematic warrantless search and through genuinely independent and lawfully obtained evidence that would have led to the same discovery regardless of the constitutional violation. *Id.* at 561-62. In Pickens's case, there is no lawfully obtained evidence that independently pointed toward Pickens's possession of contraband. The Expiration Receipt establishes with finality that every piece of information law enforcement had about Pickens's activities during the relevant period flowed from the warrantless GPS monitoring. There is no independently obtained information—no untainted tip, no independent surveillance, no lawfully executed stop—that would have led law enforcement to Pickens's vehicle independent of Omari's Fourth Amendment violations. The independent source and inevitable discovery doctrines therefore have no application.

18

4.     The Attenuation Doctrine, Properly Applied, Would Have Required Suppression

Because neither the independent source nor the inevitable discovery doctrine applies, the proper doctrinal framework for evaluating the admissibility of the evidence in Pickens's case is the attenuation doctrine. *Utah v. Strieff,* 579 U.S. 232, 237-38 (2016). Under *Strieff* and *Brown v. Illinois,* 422 U.S. 590 (1975), attenuation is assessed by reference to three factors: the temporal proximity between the unconstitutional conduct and the discovery of the evidence, the presence of the intervening circumstances and, crucially, "the purpose and flagrancy of the police misconduct." *Strieff,* 579 U.S. at 239 (quoting *Brown,* 422 U.S. at 604). The *Brown* factors overwhelmingly favor suppression in Pickens's case.

As to the first factor, there was no meaningful temporal break between Omari's warrantless GPS monitoring and the discovery of the controlled substances. The entire timeline—from the monitoring of the Chicago trip to the St. Paul stop to the flight to the seizure—constitutes a single, continuous chain of causation with no temporal interruption sufficient to dissipate the taint. See *Brown,* 422 U.S. at 604 (noting that a short temporal gap between the illegal arrest and the subsequent statement weighted in favor of suppression). As to the second factor, no genuinely independent intervening circumstances arose to break the causal chain. As demonstrated above, every step in the sequence from GPS monitoring to evidence discovery was directly caused by the prior unlawful step. Pickens's flight does not constitute a purging intervening circumstance because the flight was itself provoked by the unlawful stop that was the proximate produce of the warrantless monitoring.

The third, and most important factor—the purpose and flagrancy of the police misconduct—weighs heavily in Pickens's favor and, standing alone, warrants suppression.

19

Omari's conduct was not a good-faith mistake, a clerical error, or an inadvertent overstep. Omari signed the Expiration Receipt. He knew the tracking warrant had expired. He continued to monitor Pickens's cell phone GPS location data anyway—a decision that was not merely constitutionally deficient but also criminally prohibited under Minnesota Statutes §§ 626A.37 and 626A.35, which impose criminal penalties for the warrantless interception of electronic communications and location data. The Supreme Court has made clear that the exclusionary rule serves its deterrent function most powerfully in such cases—where law enforcement engages in deliberate, purposeful, and flagrant violations of clearly established constitutional rights. *Herring v. United States*, 555 U.S. 135, 143-44 (2009) (noting that the exclusionary rule applies most forcefully when "a law enforcement officer deliberately or recklessly disregard[s] constitutional requirements"). The Eighth Circuit, analyzing Pickens' case under a cloud of factual uncertainty about the warrant's validity, was unable to identify the flagrancy of Omari's conduct because the government had concealed the evidence—the Expiration Receipt—that would have established it. This Court, too, had to "assume without deciding" that the warrant had expired. Had the Expiration Receipt been before the courts, no reasonable court applying the *Brown* factors could have concluded that attenuation dissipated the taint of conduct so deliberate and so fundamentally unlawful.

### 5.    The Automobile Exception Does Not Save The Government

The government may argue that even if the GPS-derived stop was unlawful, officers were independently entitled to search Pickens' vehicle under the automobile exception to the warrant requirement. See *California v. Carney*, 471 U.S. 386, 390-91 (1985). The automobile exception allows officers to search a vehicle without a warrant if they have probable cause to believe it contains contraband or evidence of a crime. *United States v. Ross*, 456 U.S. 798, 824-25 (1982). The automobile exception does not apply here.

20

The automobile exception requires probable cause that is independent of, and not tainted by, the unlawful search. Officers cannot establish probable cause to search a vehicle by pointing to information they obtained through a warrantless and constitutionally prohibited surveillance operation. See *Collins v. Virginia*, 584 U.S. 586, 596 (2018) (declining to extend the automobile exception in a manner that would permit officers to use unlawfully obtained information as the foundation for a warrantless search). Prior to Omari's warrantless GPS monitoring, law enforcement had no information that would have given rise to probable cause to believe Pickens' vehicle contained contraband. The only information law enforcement had about Pickens' activities during the relevant period was derived from the warrantless GPS monitoring. The automobile exception therefore cannot supply a lawful basis for the search, because probable cause grounded in unlawfully obtained evidence is no probable cause at all. *Wong Sun*, 371 U.S. at 485. The automobile exception provides no safe harbor for the government in this case.

6.      Federal Rule Of Criminal Procedure 41 Independently Mandates Suppression

Federal Rule of Criminal Procedure 41 governs the issuance and execution of search warrants. Rule 41(e)(2)(A) requires that a search warrant "command the officer to … execute the warrant within a specified time no longer than 14 days." Fed. R. Crim. P. 41(e)(2)(A). The warrant in this case had a specified expiration date, as confirmed by the Expiration Receipt. Once the warrant expired, all authority to conduct GPS monitoring under that warrant was extinguished. Omari's continued monitoring of Pickens' cell phone GPS location data after the warrant's expiration was therefore not merely a constitutional violation—it was also a violation of the terms and conditions of the warrant itself and a violation of Rule 41's requirement that search warrants be executed within their specified period.

Courts have held that a knowing and deliberate violation of Rule 41's requirements constitutes a fundamental violation of the Fourth Amendment that mandates suppression regardless of good faith. See *United States v. Ganias*, 824 F.3d 199, 224-25 (2d Cir. 2016) (en banc) (discussing Rule 41's role in defining the scope of permissible searches and the consequences of exceeding that scope); *Groh v. Ramirez*, 540 U.S. 551, 557 (2004) (holding that a search conducted pursuant to a warrant that failed to satisfy the particularity requirement of the Fourth Amendment was "presumptively unreasonable."). Omari's conduct was not a technical or ministerial deviation from Rule 41's requirements. He signed the Expiration Receipt—he knew the warrant had expired—and then continued to conduct GPS monitoring as if the warrant were still valid. This is a willful, knowing violation of Rule 41, of the Fourth Amendment, and of Minnesota's statutory law. The good faith exception of *United States v. Leon*, 468 U.S. 897 (1984), and *Herring*, 555 U.S. at 137, does not apply to deliberate violations of known constitutional requirements. *Davis v. United States*, 564 U.S. 229, 239 (2011) (the good faith exception "applies when the police act with an objectively reasonable good-faith belief that their conduct is lawful"—a standard Omari plainly cannot meet given that he signed the document confirming the warrant's expiration). Suppression was therefore mandated under Rule 41 and the Fourth Amendment, and trial counsel's failure to obtain suppression, which was caused in material part by the government's concealment of the Expiration Receipt, was constitutionally prejudicial.

7.    The Ineffective Assistance Claims That The Government's Fraud Prevented Pickens From Fully Presenting

The government's suppression of the Expiration Receipt prevented Pickens from presenting three categories of ineffective assistance claims that would have been available

22

to him had the *Brady* material been disclosed. Each of these claims has substantial merit and each was directly foreclosed by the government's fraud.

*First*, had the Expiration Receipt been available, Pickens could have argued with documentary support that his trial counsel was constitutionally deficient for failing to conduct an adequate investigation into the validity of the tracking warrant. *Strickland*, 466 U.S. at 690-91 (counsel has a duty to conduct reasonable investigation into the facts of the case). The Expiration Receipt was a document signed by the government's lead investigating officer. A reasonably diligent attorney, having been told by Pickens that the tracking was potentially unlawful and having committed to filing a suppression motion, was obligated to request, investigate, and pursue documents bearing on the validity of the warrant. Counsel's failure to do so—and his inexplicable withdrawal of the suppression motion on the morning of the suppression hearing—reflects a complete abdication of the investigative duty that *Strickland* demands. *Kimmelman v. Morrison*, 477 U.S. 365, 385 (1986) (holding that counsel's failure to investigate and file a colorable suppression motion can constitute constitutionally deficient performance under *Strickland*).

*Second*, trial counsel was constitutionally deficient for failing to cross-examine and impeach Commander Omari and other government witnesses who testified or implied that the GPS tracking was conducted pursuant to a valid warrant. See *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (counsel's duty to investigate includes obtaining information that would enable effective cross-examination of adverse witnesses). The Expiration Receipt—a document signed by Omari himself—was devastating impeachment material. It contradicted the premise of Omari's testimony directly and in the most concrete possible way. A competent attorney with the Expiration Receipt would have confronted Omari on cross-examination with his own signature on a document confirming the warrant's expiration. The failure to conduct this cross-examination, which was caused and

23

compounded by the government's suppression of the Expiration Receipt, was both deficient performance and prejudicial under *Strickland.*

*Third*, trial counsel was constitutionally deficient for failing to object to the jury instruction that told the jury the tracking warrant was valid. Erroneous jury instructions that misinform the jury on a critical factual predicate of the prosecution's case are constitutionally infirm. Cf. *United States v. Gaudin*, 515 U.S. 506, 510 (1995). The jury in Pickens's case was instructed on a facual premise— the validity of the tracking warrant— that was demonstrably false, as the Expiration Receipt now confirms. Counsel's failure to object to this instruction, which again was compounded by the government's suppression of the very document that would have exposed the instruction as factually erroneous, was prejudicial under *Strickland* because it permitted the jury to assess the government's evidence against the background assumption that Omari had acted lawfully, when he had not.

## II. In The Alternative, The Court Should Vacate The Judgment Pursuant To Federal Rule Of Civil Procedure 60(B)(6)

Federal Rule of Civil Procedure 60(b)(6), often called the "catch-all" provision, authorizes a court to relieve a party from a final judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). The Supreme Court has described Rule 60(b)(6) as a "grand reservoir of equitable power to do justice in a particular case" that "should be applied in exceptional circumstances." *Lilijeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864 (1988) (internal quotation marks and citation omitted). Relief under Rule 60(b)(6) requires a showing of "extraordinary circumstances" that justify reopening a final judgment. *Gonzalez v. Crosby*, 545 U.S. at 535. The eighth Circuit has recognized that the "extraordinary circumstance" standard is satisfied when denying relief would produce a result that is fundamentally unjust or inconsistent with the principles of equity. *Rouse v.*

*United States*, 14 F.4th 795, 800-01 (8th Cir. 2021). Unlike Rule 60(b)(1) through (b)(5), a motion under Rule 60(b)(6) must be filed "within a reasonable time," Fed. R. Civ. P. 60(c)(1), which courts evaluate in light of the circumstances of the case. Where, as here, the moving party's delay in bringing the motion is attributable to the opposing party's fraud and suppression of evidence, the delay is entirely excused. See *Kemp v. United States*, 596 U.S. 528, 534 (2022) (affirming the availability of Rule 60(b) in habeas proceedings and emphasizing the rule's role in ensuring fundamental fairness); *Buck v. Davis*, 580 U.S. 100, 123 (2017) (holding that extraordinary circumstances warranting Rule 60(b)(6) relief were present where constitutional violations had fundamentally undermined the reliability of the proceedings below). Pickens satisfies this standard.

A.    **A Rule 60(b)(6) Motion Grounded in Extraordinary Government Misconduct Is Not a Second or Successive § 2255 Petition**

For the reasons set forth in Section I.B above, this motion does not constitute a second or successive § 2255 petition requiring prior authorization from the Eighth Circuit. The analysis applicable to Rule 60(b)(3) motions under *Gonzalez v. Crosby* applies with equal force to Rule 60(b)(6) motions. *Gonzalez*, 545 U.S. at 532 & n.5. The touchstone of the inquiry is whether the motion attacks the integrity of the federal habeas proceeding or asserts a new merits-based claim for relief from the underlying conviction. *Id.* This motion does the former. Pickens challenges the procedural integrity of the § 2255 proceedings based on the government's sustained suppression of evidence material to every claim he asserted in those proceedings. He does not ask the Court to revisit its legal analysis of the claims actually presented; he asks the Court to reopen the proceedings so that the full range of claims—which were available only with the Expiration Receipt in hand—can be fairly and fully adjudicated. This is precisely the type of challenge that *Gonzalez* identified as the proper subject of Rule 60(b) rather than a successive § 2255 petition.

25

The circuits are in accord on this point. In *United States v. Buenrostro*, 638 F.3d 720, 722 (9th Cir. 2011), the Ninth Circuit held that a Rule 60(b) motion challenging government misconduct in prior habeas proceedings—including the suppression of evidence material to habeas claims—is not a successive petition but rather an attack on the integrity of the prior proceeding, squarely within the *Gonzalez v. Secretary for the Department of Corrections*, 366 F.3d 1253, 1294-95(11th Cir. 2004) (en banc), aff'd, 545 U.S. 524, the en banc Eleventh Circuit similarly held that Rule 60(b) motions attacking defects in the habeas proceeding itself do not constitute successive petitions. This Court should reach the same conclusion here.

B.    **The Extraordinary Circumstances of This Case Warrant Relief Under Rule 60(b)(6)**

If Rule 60(b)(3) does not independently support vacatur—though Pickens respectfully submits it clearly does—the extraordinary circumstances of this case provide an independent and compelling basis for relief under Rule 60(b)(6). The Supreme Court has repeatedly cautioned that Rule 60(b)(6) is available to prevent manifest injustice, particularly when the party seeking relief has been the victim of conduct by an opposing party that fundamentally compromised the integrity of the judicial process. *Buck v. Davis*, 580 U.S. at 122-23; *Lilijeberg*, 486 U.S. at 863-64. No case in recent memory more clearly satisfies this standard than Pickens's.

The government's suppression of the Expiration Receipt was not a discrete, isolated act of misconduct. It was a sustained course of conduct that persisted across every phase of the proceedings against Pickens—the *Brady* motion, the trial, the direct appeal, and the § 2255 habeas proceeding. At every stage, the government possessed documentary proof that its lead investigation officer had conducted a warrantless search in knowing violation of Pickens's Fourth Amendment rights and in violation of Minnesota criminal law. At every

26

stage, the government allowed its witnesses to testify or imply that the tracking was lawful. At every stage, the government failed to correct the courts' factual uncertainty—a factual uncertainty that the Eighth Circuit expressly acknowledged on direct appeal—about the validity of the tracking warrant. And at every stage, the government affirmatively benefited from that uncertainty, securing the rejection of Pickens's suppression arguments not because those arguments were legally meritless, but because the government had concealed the very evidence that would have rendered them meritorious.

The "extraordinary circumstances" that Rule 60(b)(6) requires are circumstances that go beyond ordinary litigation error and rise to the level of fundamental unfairness that equity cannot tolerate. *Gonzalez*, 545 U.S. at 536. This case presents such evidence derived entirely from a warrantless search conducted by an officer who signed a document confirming that the warrant had expired. The government then concealed that document— which it knew to be exculpatory and which it was constitutionally obligated to disclose— while allowing its lead witness to testify about the lawfulness of his surveillance was the decisive question. The result was a federal conviction obtained through the knowing use of constitutionally tainted evidence, a conviction that stands today only because the government suppressed the proof of its own constitutional violations.

The Supreme Court has identified government suppression of *Brady* material in the post-conviction context as among the most serious threats to the integrity of the criminal justice system. *Banks v. Dretke*, 540 U.S. at 696-97. In *Banks*, the Court condemned in the strongest terms the practice of sustained *Brady* suppression that spans multiple proceedings, particularly where the suppresses evidence would have fundamentally altered the outcome of those proceedings. *Id.* the Court emphasized that the government's bad faith in withholding clearly exculpatory evidence—evidence it knows to be material and the disclosure of which it knows to be constitutionally required—is a factor that weighs heavily

27

in favor of relief on collateral review. *Id.* at 703. The facts in Pickens's case are at least as egregious as those in *Banks*. The Expiration Receipt was not obscure or ambiguous; it was a document signed by the government's own officer, reflecting the expiration of the very warrant whose validity was the contested issue throughout the proceedings. The government's suppression of that document through every stage of the proceedings against Pickens was, in the words of *Banks*, "a fundamental unfairness" that equity requires this Court to remedy.

### C.   Rule 60(b)(6) Relief Is Necessary to Vindicate the Integrity of the Habeas Proceedings and the Rule of Law

The significance of Rule 60(b)(6) relief in this case extends beyond the vindication of Pickens's individual constitutional rights. It implicates the fundamental principle that federal courts will not allow their own proceedings to be corrupted by the suppression of material evidence by the party who bears the constitution's heaviest burdens in the criminal process— the government. See *Giglio v. United States*, 405 U.S. 150, 153 (1972) (recognizing that the government's obligation of candor in criminal proceedings is a cornerstone of the due process guarantee). The § 2255 proceedings in this Court were infected by the government's suppression of the Expiration Receipt from beginning to end. The court's ruling—that suppression would have been futile because Pickens's flight provided an independent basis for the search—was predicated on factual uncertainty that the government's own documents would have resolved. The court was asked to evaluate the independence and lawfulness of the stop without the documentary evidence—the Expiration Receipt—that would have established the stop's unlawful, warrantless predicate. It reached a conclusion that the law would not have permitted had that evidence been before it. To deny Rule 60(b)(6) relief in these circumstances would be to ratify a process in which the government can secure a denial of habeas relief by suppressing the

28

very evidence that would have compelled habeas relief. The courts cannot sanction that result. Cf. *McCleskey v. Zant*, 499 U.S. 467, 495 (1991) (recognizing that the habeas corpus proceeding is the "last resort" for those who are unjustly imprisoned and that courts must take seriously allegations of constitutional violations that were caused by governmental misconduct). Rule 60(b)(6) exists precisely for cases like this one, where the normal operation of finality principles would produce a result so fundamentally unjust that equity demands intervention. *Lilijeberg*, 486 U.S. at 863. This is that case.

Vacatur of the § 2255 judgment is the appropriate remedy. The appropriate remedy upon granting this motion under either Rule 60(b)(3) or Rule 60(b)(6) is vacatur of the judgment denying Pickens's § 2255 motion and reopening of the § 2255 proceedings to permit Pickens to file an amended § 2255 motion presenting the full range of claims that were foreclosed by the government's suppression of the Expiration Receipt. Those claims include: (1) a *Brady* violation based on the government's suppression of the Expiration Receipt;(2) prosecutorial misconduct based on the government's presentation of false or misleading testimony regarding the validity of the tracking warrant and its failure to correct the erroneous jury instruction; (3) an ineffective assistance of counsel claim grounded in trial counsel's failure to investigate the warrant's validity with the benefit of the Expiration Receipt; (4) an ineffective assistance claim grounded in trial counsel's failure to cross-examine and impeach Omari and other government witnesses regarding the warrant's expiration; (5) an ineffective claim grounded in trial counsel's failure to object to the jury instruction that falsely told the jury the tracking warrant was valid; and (6) a fully developed Fourth Amendment suppression claim demonstrating that, with the Expiration Receipt in the record, the independent basis doctrine gives way to the attenuation doctrine, which overwhelmingly favors suppression given the deliberate, knowing, and criminal nature of Omari's warrantless GPS tracking.

## CONCLUSION

For the foregoing reasons, Petitioner Pickens respectfully requests that this Court vacate the judgment denying his 28 U.S.C. § 2255 motion presenting the full range of claims that the government's fraudulent suppression of the Expiration Receipt prevented him from raising. The government concealed the proof of its own constitutional violations across every stage of the proceeding against Pickens—from the *Brady* motion through the habeas proceeding—and that concealment infected every adverse ruling Pickens received. Justice, equity, opportunity to litigate his claims that the Constitution has always entitled him to.

Dated: 5/07/26

John Sheldon Pickens
Unit K3
Federal Correctional Institution
P.O. Box 1000
Sandstone, MN 55072
*Pro Se*